JAMES M. BECK AND VICKI Y. BECK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Beck v. Commissioner
Docket No. 9655-90
United States Tax Court
T.C. Memo 1994-392; 1994 Tax Ct. Memo LEXIS 401; 68 T.C.M. (CCH) 402; 94-2 U.S. Tax Cas. (CCH) P47,954; August 17, 1994, Filed *401 Decision will be entered for respondent except for the additions to tax pursuant to section 6659. James M. Beck, pro se. For respondent: T. Elizabeth Stetson and Sherri L. Feuer. DAWSON
DAWSON
MEMORANDUM OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Helen A. Buckley pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the Opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE BUCKLEY, Special Trial Judge: Respondent determined deficiencies in Federal income taxes and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)
Sec. 6659
1978
$ 3,383
$ 195
$ 1,168
1979
14,316
716
4,295
1980
25,271
1,264
7,581
Respondent also determined that the underpayment for each year arises from *402 a tax-motivated transaction under section 6621(c) for which additional interest is due. After concessions, [2] the issues for decision are: (1) Whether petitioners are subject to increased interest pursuant to section 6621(c); and (2) whether respondent erred in her computations of the deficiencies in each year. *403 Some of the facts are stipulated, and they are so found. The stipulation of facts and attached joint exhibits are incorporated herein by reference. Petitioners resided in Placentia, California, when they timely filed their petition herein. Background. All adjustments made by respondent in this case have arisen as a result of respondent's disallowance of a net operating loss carryback and investment tax credit carryback from petitioners' 1981 Federal income tax return to the years at issue. The claimed losses arise from two investments made by petitioners, commonly called the Golden Age Treasury and International Recovery investments. James M. Beck (petitioner) has had a long-time interest in gold and other precious metals. His father, Warren A. Beck, was a professor of history who published a number of books about California and the American West. Petitioner traveled throughout the West on vacations with his father who would lecture petitioner often on the exploration of the West and on precious ore mining. Both petitioners are college educated. Petitioner holds a bachelor of science degree in social sciences with a major in history. Mrs. Beck holds a bachelor of arts *404 degree in art. Petitioner was involved in the military/commercial aerospace electronics industry from April 1969 to December 1982. Throughout 1981, he was General Sales Manager and Vice-President of Marketing at Matrix Science Corporation. Petitioner's interest in gold and other precious metals has also arisen from his business experiences. Petitioner was involved in the manufacture of high-performance connectors for military usage, which required some gold coating for efficient connection. The two investments which he made, both purportedly involved gold ore mining. Negligence. As stated in footnote 2, petitioner agreed that he was negligent in entering into the Golden Age Treasury investment. The Court carefully explained to petitioner, that in making such concession, he was in effect agreeing that he was liable for negligence for all of the underpayments at issue, not just for the portion of the underpayments attributable to the Golden Age Treasury investments. Sec. 6653(a). Petitioner agreed that he so understood. Accordingly, the issue of negligence has been conceded by petitioners for each of the years before the Court. Tax-Motivated Transactions - *405 Section 6621(c). Section 6621(c) provides for an increased interest rate with respect to any "substantial underpayment" (greater than $ 1,000) in any taxable year "attributable to one or more tax motivated transactions". The increased rate of interest applies to interest accrued after December 31, 1984, even though the transaction was entered into prior to the enactment of the statute. , affd. without published opinion . The term "tax motivated transaction" includes any "sham or fraudulent transaction". Sec. 6621(c)(3)(A)(v). The statutory language encompasses transactions which are without business purpose and lack any opportunity for profit. . In connection with increased interest under section 6621(c), this Court has considered at length the International Recovery, Inc. (hereafter International) program in which petitioners invested. See . Petitioners invested in the Reward Brown *406 Monster mine program, which was offered by International. This Court found in Hodges "that a sufficient business purpose simply did not exist". As we stated in regard to the taxpayers in : In short, the record demonstrates a complete failure by petitioners to make a proper evaluation of the mining programs and a marked indifference to the profit aspects of the various mining programs in which they took part. Their readiness to accept with no apparent reluctance an obligation of a royalty of 60 percent of the total gold and silver bullion produced from their mineral aggregate, their willingness to purchase a unit of mineral aggregate at some undeterminable location, and their willingness to accept the entire International package without negotiation and without questioning the reasonableness of the projected mining costs or the validity of the estimated income potential from their mineral aggregate belie a business purpose on the part of petitioners in entering these transactions.
We concluded that the International mining transactions there involved were entered into by the taxpayers solely for tax benefits, *407 were completely lacking in any discernible economic substance, were a sham, and would not be recognized for Federal income tax purposes. Petitioners bear the burden of proving that respondent was incorrect when she determined that they would be liable for additional interest pursuant to section 6621(c) on the underpayments attributable to the International transaction. Petitioner, although perhaps more knowledgeable than most of the taxpayers in , has failed to convince us that his investment was not in a tax-motivated transaction, and we hold that section 6621(c) is applicable to the resulting underpayments. Petitioner in his testimony regarding the Golden Age Treasury investment classified it as a sham transaction in which he was "scammed". We agree with his assessment. That investment was strikingly similar to the International investment. The program touted a 400-percent tax write-off and made extravagant ore claims. Respondent's expert report, part of the stipulated record herein, makes it apparent that there could be no business purpose to the investment program. Petitioners have not argued to the contrary. *408 They are liable for increased interest for a tax-motivated transaction under section 6621(c) with respect to the underpayments resulting from the Golden Age Treasury investment. Computational Questions. The jurisdiction of this Court relates only to the 3 years here at issue; we considered facts occurring in 1981 solely because of petitioners' claimed carrybacks from 1981 to the 3 earlier years. Petitioner questions the accuracy of the computations on the notice of deficiency. Petitioner, we believe, is confusing refunds, which he believes are due him, with the technical definition of a tax deficiency. Section 6211(a) defines a "deficiency" as "the amount by which the tax imposed" exceeds the excess of the sum of the amount shown as the tax by the taxpayer on his return plus the amounts previously assessed as a deficiency. Respondent advised petitioner and the Court at trial herein that petitioners' Form 1040X for 1981, which petitioners apparently mailed to respondent along with their 1982 return, was not processed by respondent. Thus the 1981 Form 1040X, which reported the interest income that was not reported on the original Form 1040 for 1981 was not considered *409 by respondent in the preparation of the notice of deficiency. Respondent in her status report filed January 3, 1994, has attached in detail the record of account taken from petitioners' processed returns for the 3 years before the Court and 1981. The amounts shown on the notice of deficiency for "Total tax per return or previously adjusted" correspond to the figures shown on respondent's record of account. In any event, petitioners have not presented to the Court any evidence that the amounts shown as deficiencies were improperly set forth. Decision will be entered for respondent except for the additions to tax pursuant to section 6659. Footnotes
1. Section references are to the Internal Revenue Code in effect for the years in issue; Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent at the hearing herein conceded that petitioners are not liable for the additions to tax pursuant to sec. 6659. Petitioners conceded that they were not contesting their liability for tax deficiencies in regard to the two investments involved herein, except that they contest the manner in which respondent computed the deficiencies insofar as respondent did not take into account the interest income reported on their amended return for 1981. Petitioners also concede they received $ 1,171 in taxable interest income from U.S. Savings Bonds in 1981, which amount was not reported on their original return for that year and which affects their claimed carryback amounts. Further, petitioners conceded at trial that they were negligent in regard to the deductions claimed in connection with the Golden Age Treasury investment. After considerable discussion on the record, the Court made clear to petitioners that the concession of negligence in regard to the Golden Age investment resulted in the imposition of the addition for negligence on the full amount of the underpayment for each year in issue.↩